UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN SEARS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES,<br><br>　　　　　Defendant.<br>_____/ | No. C 07-02129 MHP<br><br>**MEMORANDUM & ORDER**<br><br>Re: Petitioner's Motion to Vacate His Sentence and Conviction (28 U.S.C. section 2255) |

　　　　On October 16, 2003, the court sentenced petitioner John Sears ("petitioner") to a term of 108 months for pleading guilty to possession of cocaine base and cocaine powder in violation of 21 U.S.C. section 841. On April 17, 2007, petitioner filed a pro se motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. section 2255 ("section 2255"). Upon consideration of that motion, the court ordered respondent to answer petitioner's claims. Respondent's answer and petitioner's traverse are now before the court. Having considered the arguments and submissions of the parties and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

I.　　Procedural History

　　　　On May 1, 2003, petitioner entered a conditional guilty plea to charges of possession of cocaine for sale in violation of 21 U.S.C. section 841. See Docket No. 128 (May 1, 2003 Minutes).[1]

1  He was subsequently sentenced to a term of 108 months on October 16, 2003. *See* Docket No. 138
2  (Oct. 16, 2003 Minutes).   He filed a petition for Writ of Habeas Corpus pursuant to 28 U.S.C.
3  section 2255 on April 17, 2007. *See* Docket No. 150 (Motion to Vacate).  On February 15, 2008,
4  petitioner's case was reassigned to the Honorable Judge Marilyn H. Patel. *See* Docket No. 159
5  (Order Reassigning Case).  On March 28, 2008, the court reduced petitioner's sentence to 87 months
6  pursuant to the retro-active change in the Guidelines for Crack Cocaine. *See* Docket No. 168 (Order
7  Reducing Sentence).  Petitioner was released shortly thereafter.  On May 6, 2009 the court dismissed
8  petitioner's petition for Writ of Habeas Corpus holding that the only question presented by the
9  petition was the legality of petitioner's detention, and since he was no longer incarcerated, there was
10 no case or controversy to be decided. *See* Docket No. 171 (Order Dismissing Petition).  On May 28,
11 2009, petitioner submitted a request for a Certificate of Appealability ("COA") arguing that the
12 petition was not moot insofar as it challenges his conviction, and he remained detained due to the
13 terms of his supervised release. *See* Docket No. 172 (Petitioner's Request for COA).  The court
14 held, in its June 19, 2009 order, that although petitioner was no longer in prison, he was detained due
15 to his supervised release and therefore had standing. *See* Case No. CV-07-2129, Docket No. 18
16 (Order Denying COA and Rescinding).  Moreover, there was a possibility that his conviction carried
17 collateral consequences. *Id.*  Rather than grant the motion for a COA, which would unnecessarily
18 delay the progress of the action, the court denied the motion and rescinded the May 6, 2009 order.
19 *Id.*  The court now reviews  petitioner's April 17, 2007 petition for Writ of Habeas Corpus pursuant
20 to 28 U.S.C. section 2255 seeking to set aside his conditional guilty plea and the resulting sentence
21 imposed.

22 II.     The Search Warrant and Suppression Motion

23         On January 4, 2001, San Francisco Police Department ("SFPD") Officer Jon Kasper
24 ("Kasper") sought and received a search warrant for petitioner's person, vehicles, residences (84
25 Latona and 7 Maddux) and related storage spaces for evidence of cocaine trafficking.[2]  Pursuant to
26 the warrant, the officers seized certain items of illegal narcotics activity, including 1,337 grams of

1  cocaine base, 1,688 grams of powder cocaine, $44,251 in cash, drug packaging materials and a
2  digital scale.
3        The warrant referred to an attachment, Exhibit A, specifying the items the officers were
4  authorized to seize. Officer Kasper created Exhibit A by clicking on a file named "cocaine exhibit"
5  and merged it with the file containing the rest of the search warrant. Unbeknownst to Officer
6  Kasper, at the time he prepared the warrant for Superior Court Judge Leonard Louie, the police
7  department computer contained multiple versions of Exhibit A. Judge Louie approved the warrant
8  containing the December 1998 version of Exhibit A. After receiving Judge Louie's approval, Officer
9  Kasper prepared copies of the warrant for the search team by printing a fresh copy of Exhibit A on a
10 separate sheet of paper instead of making copies of Exhibit A from the original set of papers signed
11 by Judge Louie. Officer Kasper testified that as a matter of standard SFPD practice, officers do not
12 generally serve the statement of probable cause along with the rest of the search warrant and because
13 it was typical for the description of the items authorized for seizure to be written on a separate page
14 from the statement of probable cause, he sought to eliminate that part of the statement that spilled
15 over to the first page. In creating the fresh copy, however, he attached the July 1997 version of
16 Exhibit A rather than the December 1998 version approved by Judge Louie.
17       The version of Exhibit A given to the search team differed from the version of Exhibit A
18 actually approved by Judge Louie by the addition of eight words. The Exhibit given to the search
19 team included the following italicized language which was not included in the version presented to
20 Judge Louie: "[a]ll articles of personal property tending to establish and document sales of cocaine,
21 consisting in part, of articles of personal property tending to establish the identity of persons in
22 control of premises, vehicles, storage areas or containers located at, *or nearby*, or related to the
23 subject premises where cocaine may be hidden. All vehicles, storage areas or containers located at,
24 *or nearby*, or related to the subject premises where cocaine may be hidden; all articles of personal
25 property tending to establish the location of such premises, vehicles, storage areas aor containers
26 where cocaine may be found or secreted, consisting of and including *but not limited to*, utility bills
27 and receipts, rent receipts, canceled mail envelopes and keys." In the course of litigating petitioner's
28

3

1  March 6, 2002 motion to suppress cocaine seized in the subsequent search, it was discovered that the
2  version of Exhibit A approved by Judge Louie was not the version of Exhibit A given to the
3  searching officers. Officer Kasper testified that he did not learn that the two versions of Exhibit A
4  differed until a few weeks prior to the July 31, 2002 evidentiary hearing on the discrepancies
5  between the two attachments. After a hearing, the district court found Officer Kasper's account
6  credible and stated that the wrong version of Exhibit A was attached to the warrant and taken to the
7  site of the search "by mistake."

8  Based on *New York v. Harris*, 495 U.S. 14 (1990), and *United States v. Clark*, 31 F.3d 831
9  (9th Cir. 1994), the district court ultimately held that "only those items seized pursuant to the
10 overbroad part of the warrant would be subject to suppression." *United States v. Sears*, 411 F.3d
11 1124, 1127 (9th Cir. 2005) The district court also held that because no evidence was seized pursuant
12 to the overbroad parts of the warrant, the district court effectively denied petitioner's motion to
13 suppress. Thereafter, petitioner entered a conditional guilty plea to charges of possession of cocaine
14 base and cocaine powder in violation of 21 U.S.C. section 841(a)(1); by virtue of the plea, waived
15 his right to appeal and collaterally challenge his conviction except to appeal the denial of his
16 suppression motion and to present an ineffective assistance of counsel claim.

17 Petitioner did appeal the denial of his suppression motion to the Ninth Circuit. The Ninth
18 Circuit, affirmed the district court, holding that because the violation of the particularity requirement
19 was not intentional, the appropriate remedy was not wholesale suppression of all the evidence seized,
20 but rather partial suppression of only that evidence seized pursuant to the overbroad portions of the
21 warrant. *Seats*, 411 F.3d at 1127-32. Since no evidence was seized pursuant to the overbroad
22 portions of Exhibit A, it was unnecessary to suppress any of the evidence.

23

24 LEGAL STANDARD

25 Pursuant to section 2255, a petitioner sentenced by a federal court may move to vacate,
26 set aside or correct his or her sentence. 28 U.S.C. § 2255. The federal habeas statute allows a
27 prisoner in federal custody to challenge the imposition or the length of the sentence "upon the ground

28
4

that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." *Id.* If any of these four grounds exist, the court "shall vacate and set the judgment aside and shall discharge the prisoner or re-sentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.*

DISCUSSION

On April 17, 2007, petitioner filed a motion under 28 U.S.C. section 2255 seeking to set aside his conditional guilty pleas and the resulting 108 month sentence imposed. Petitioner argues that he was denied effective assistance of counsel in the following three ways: (1) his counsel failed to investigate and bring to the court's attention misconduct by Officer Jon Kasper, the affiant on the search warrant in petitioner's case, in another case not involving petitioner; (2) his counsel failed to investigate and introduce evidence of SFPD conduct that was in "flagrant disregard for the terms of the search warrant" and (3) his appellate counsel failed to argue, on appeal, that the good faith exception did not absolve the authorities for the search warrant's violation of the Fourth Amendment particularity requirement.

The Sixth Amendment guarantees that defendants are "entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Strickland v. Washington*, 466 U.S. 668, 685 (1984). A petitioner bringing a habeas corpus petition alleging a violation of this Sixth Amendment right to counsel must demonstrate that: (1) "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) "the deficient performance prejudiced the defense." *Id.* at 687. On the first prong, the court "indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *United States v. Palomba*, 31 F.3d 1456, 1466 (9th Cir. 1994). In the Ninth Circuit, a showing of "gross error" is necessary in order to prove that counsel violated a petitioner's Sixth Amendment rights. *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Petitioner bears the

5

burden of proof of showing that a "reasonable probability" exists that, but for counsel's errors, the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 694. Reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* When a claim of ineffective assistance is used to attack the validity of a guilty plea, it may only be sustained if the petitioner establishes that the ineffective performance "affected the outcome of the plea process . . . [such] that absent the erroneous advice, he would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 28 (1985).

A petitioner alleging a section 2255 claim for ineffective assistance of counsel is entitled to an evidentiary hearing if the court, assuming the truth of the factual allegations, determines that he could prevail on the merits. *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994). A petitioner's failure to allege facts sufficient to support both the performance and prejudice prongs of *Strickland* will result in dismissal of his claims without the need for an evidentiary hearing. *United States v. Birtle*, 792 F.2d 846, 849 (9th Cir. 1986).

Given the nature of petitioner's arguments, he carries a heavy burden. Not only must he demonstrate that his counsel performed deficiently by failing to conduct certain investigations and to raise specific arguments, he must also show that had his counsel done so, the outcome of the proceedings would have been different, i.e. he would not have pled guilty. In this context, to establish prejudice, petitioner must demonstrate that but for his attorney's deficient performance, the remedy petitioner would have received for the police officer's violation of his Fourth Amendment rights would have been the wholesale suppression of all of the evidence seized incident to the January 4, 2001 search. The evidence of criminal conduct seized pursuant to the warrant was so overwhelming, that any claims by petitioner that he would not have pled guilty would be patently incredible if unaccompanied by circumstances that could have resulted in wholesale suppression.

I.   Alleged Misconduct

Petitioner contends that his counsel performed deficiently by failing to investigate a pattern of misconduct allegedly perpetrated by Officer Kasper in procuring warrants. Petitioner argues that Officer Kasper's pattern of misconduct is evidenced by Officer Kasper's declaration in this case and

6

Officer Kasper's declaration filed in *United States v. McCain*, CR 01-0344 (N.D. Cal.) (Patel, J.). Petitioner contends that because Officer Kasper testified that it was "standard practice" for the SFPD to exclude the statement of probable cause when distributing an seizure item list to officers, that Officer Kasper was admitting to intentional alterations that amounted to something more than sloppy police work. In addition, petitioner argues that Officer Kasper's declaration from the *McCain* case further demonstrated the officer's pattern of misconduct. In *McCain*, the court suppressed all of the evidence seized pursuant to a search warrant because the officers had misrepresented to the magistrate judge that the information contained in their affidavit had been obtained from a human source when in fact it had been obtained from a wiretap. Petitioner argues that it was unreasonable for petitioner's counsel to fail to investigate these potential instances of misconduct, and that he would not have entered a guilty plea had he been aware of the misconduct.

Petitioner has not shown that petitioner's attorney performed deficiently by failing to investigate allegations of misconduct against Officer Kasper. On the record before the court, a reasonable lawyer could have determined that, given Officer Kasper's explanation for the discrepancy between the Exhibit A presented to the magistrate judge and the Exhibit A distributed to the search team, no further investigation into whether such conduct was intentional was required.

The misconduct by Officer Kasper in *McCain* is of no aid to petitioner. To begin with, Officer Kasper's declaration filed in *McCain* is dated June 11, 2003 and was filed on June 16, 2003. *See* CR#01-0344 (N.D. Cal.) (Patel, J.), Docket No. 660 (Jon Kasper Declaration). Petitioner's second motion to suppress (the motion dealing with the overbroad language) was filed on June 6, 2002, a full year before Officer Kasper filed his declaration in *McCain*; this court issued an opinion on petitioner's motion on April 10, 2003, and petitioner pled guilty on May 1, 2003. Therefore, petitioner's attorney could not have possibly known about the declaration or explored the matters referred to therein at the time that petitioner filed his motion to suppress or entered his guilty plea. Petitioner suggests that petitioner's attorney could have examined the publically available warrant affidavit before Officer Kasper submitted his declaration in *McCain*. It is beyond unreasonable,

however, to expect a defense attorney to examine every single warrant affidavit ever submitted by the affiant in his client's case in the hopes of uncovering some systematic misconduct.

Even had petitioner's attorney been aware of the declaration in *McCain* prior to the resolution of petitioner's motion to suppress, the misconduct described in the *McCain* declaration is qualitatively different from the alleged misconduct in the instant case, and therefore would have been irrelevant to the resolution of the motion to suppress. In *McCain*, this court held that the decision to suppress was based upon the fact that the affiant described wiretap information in the affidavit submitted for a search warrant as if it were human information which prevented the judicial officer from exercising proper judgment. *United States v. McCain*, 271 F. Supp. 2d 1187, 1195 (N.D. Cal. 2003) (Patel, J.). In the instant case, both the district court and the Ninth Circuit concluded that Officer Kasper's use of the wrong Exhibit A was unintentional. Neither common sense nor any evidence in the record indicates that the district court or the Ninth Circuit would have determined that Officer Kasper's conduct was intentional (and therefore necessitated wholesale suppression of the evidence seized), had they been presented with Officer Kasper's misconduct in *McCain*.

To the extent that petitioner contends that the probable cause for the search warrant in his case, like the one in *McCain*, was predicated on information attributed to a human source, but actually gathered from a wiretap, petitioner fares no better. In support of this theory, petitioner tendered an affidavit, dated March 15, 2007, from his grandmother, Arthelia Mims, that one year after the search of her home pursuant to the search warrant at issue in this case, she received a notification in the mail that wiretap surveillance had been conducted on her home in December 2000, one month before the search at issue. *See* Docket No. 152 (Mot. to Expand the Record), Exh. C (Arthelia Mims Aff.). Because Officer Kasper's affidavit in this case attributed information to a "confidential reliable informant," much like Officer Kasper did in *McCain*, where he attributed information to a "confidential reliable source", petitioner alleges that Officer Kasper presented false information to the magistrate judge in the instant case so that a search warrant would issue, just as Officer Kasper did in *McCain*. Had petitioner presented any evidence that his attorney was or should have been aware of this information and yet did not raise it as a justification for

8

1  suppressing the evidence seized pursuant to the warrant, petitioner *might* have been able to satisfy
2  both the performance and prejudice prongs of the *Strickland* standard. But petitioner does not even
3  show how the wiretapping once known would have made any difference in his attorney's
4  performance or the outcome of the proceedings. It is abundantly reasonable for an attorney to
5  presume that his client's home had not been wiretapped in the absence of any evidence indicating
6  that it had been wiretapped. Accordingly, petitioner's attorney did not perform deficiently in failing
7  to attack the warrant at issue on the ground that Officer Kasper had deliberately misled another
8  magistrate judge in an entirely different case, in a different manner and at a time in the future..

9  Petitioner also vociferously asserts that, because his attorney failed to present evidence that
10 Officer Kasper engaged in the "standard practice" of formatting warrant affidavits in such a manner
11 that it would be necessary to print out a separate copy of the list of items to be seized, his attorney
12 performed deficiently and petitioner suffered prejudice. Even assuming that petitioner's attorney
13 was deficient in failing to investigate this practice, petitioner has not demonstrated any resulting
14 prejudice. Petitioner focuses on the Ninth Circuit opinion from his case, in which the majority held
15 that "if Officer Kasper's actions in this case had been shown to be standard practice in the SFPD,
16 *and* the resulting problem seen here to be anything other than unusual and unforeseen, this would be
17 a very different case." *Sears*, 411 F.3d at 1132 (emphasis added). Petitioner entirely ignores the
18 second portion of the hypothetical clause of that sentence; while petitioner has presented some
19 evidence that Officer Kasper routinely attached exhibits in such a manner that they required
20 reprinting when distributed to field officers, he has presented absolutely no evidence that the
21 problem that resulted from that formatting—distributing the *wrong* exhibit to the searching
22 officers—was "anything other than unusual and unforeseen." In the absence of such evidence of
23 other problems from this practice, petitioner cannot demonstrate that the result of his suppression
24 motion would have been any different, and therefore cannot establish prejudice.

25 Accordingly, all of petitioner's ineffective assistance of counsel arguments predicated upon
26 his attorney's failure to investigate Officer Kasper's misconduct are denied.

27
28

9

United States District Court
For the Northern District of California

0.II. Alleged Flagrant Disregard of the Terms of the Warrant

Petitioner alleges that he would not have pled guilty had his attorney investigated and presented to the court evidence that SFPD officers conducted a warrantless search of 7 Maddux on January 17, 2001, during which they allegedly seized a notebook. Petitioner appears to be arguing that had the court been presented with such evidence, the court would have ordered the wholesale suppression of all the evidence seized on incident to the January 4, 2001 search, for which the police possessed a warrant. Petitioner's argument rests upon a flawed reading of the Ninth Circuit's opinion in his case. The Ninth Circuit wrote that where there is " 'flagrant disregard' for the terms of the warrant, the district court may suppress all of the evidence, including evidence that was not tainted by the violation." *Id.* at 1131. Petitioner contends that the subsequent, warrantless search of 7 Maddux on January 17, 2001 constituted "flagrant disregard" for the warrant that issued for the January 4, 2001 search. That is simply not the case. Any alleged search conducted on January 17, 2001 was separate and apart from the January 4, 2001 search; accordingly, any constitutional infirmities in the January 17, 2001 search would therefore result only in the suppression of the evidence illegally seized during that search, i.e., the notebook. Any other interpretation of the Fourth Amendment would lead to the absurd conclusion that police misconduct engaged in subsequent to a lawful search conducted with a warrant must result in the suppression of the lawfully seized evidence. Therefore, even accepting petitioner's allegations, his attorney's failure to present such evidence could not possibly have resulted in an outcome to petitioner's suppression motion—the wholesale suppression of the evidence seized on January 4, 2001—that would have induced petitioner to proceed to trial.

Petitioner also contends that his attorney provided ineffective assistance by failing to point out that an individual named Jimmie Johnson was arrested incident to the January 4, 2001 search, but that Officer Kasper's police report fails to note Johnson's arrest. Although it is not clear why this abnormality would entitle petitioner to the wholesale suppression of the evidence seized during that search, given its location in his moving papers, he presumably contends that such conduct by the police was in "flagrant disregard" of the warrant. Petitioner is mistaken. To begin with, petitioner

has not provided sufficient evidence that Johnson was in fact arrested at 7 Maddux on January 4, 2001. The only evidence submitted by petitioner is a "Certificate of Release" for Johnson indicating that he was detained (not arrested) on January 4, 2001 at 5:50 PM and released at 6:15 PM. *Sears v. United States*, C 07-2129, Docket No. 1 (Pet.), Exh. J (Certification of Release). The certificate contains no information about where Johnson was detained. More importantly, even assuming Johnson was arrested at 7 Maddux and that Officer Kasper intentionally omitted including any details regarding Johnson in his police report, petitioner has not indicated any reason why that omission would entitle him to the wholesale suppression of all the other evidence seized pursuant to the search. As the Ninth Circuit repeatedly emphasized in its opinion in petitioner's case, "[w]holesale suppression is an 'extraordinary remedy.'" *Sears*, 411 F.3d at 1131. The omission from a police report that an individual was arrested incident to a valid search, where there is no evidence that the individual was relevant, in any way, to the criminal investigation, does not provide grounds for invoking the "extraordinary" remedy of wholesale suppression.

Accordingly, none of petitioner's allegations of "flagrant disregard" for the terms of the warrant entitle petitioner to relief.

III.   Good Faith Exception

Petitioner argues that his appellate counsel was ineffective because he "did not argue an [sic] appeal that the 'Good Faith Exception' in *U.S. v. Leon*, 468 U.S. 87 (1994), did not apply to the execution of the search warrant in this instant." Pet. at 20. The government correctly responds that it never argued that the *Leon* exception should be used to excuse the government's violation of the Fourth Amendment's particularity requirement. Rather, the government argued, and the Ninth Circuit held, that the appropriate remedy for the violation was suppression of only those items seized pursuant to the offending language of the warrant. The court finds that petitioner's appellate counsel cannot be deemed to have provided ineffective assistance for failing to raise an argument on a matter that was never raised as an issue in the case or on appeal.

11

CONCLUSION

For the aforementioned reasons, petitioner's motion to vacate his sentence and conviction is DENIED.

A certificate of appealability will not issue. See 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

IT IS SO ORDERED.

Dated: Sept. 16, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

## ENDNOTES

1. Unless otherwise indicated, docket numbers refer to Case No. CR-01-0070 (N.D. Cal.) (Patel, J.).

2. The facts contained in this section are taken from *United States v. Sears*, 411 F.3d 1124 (9th Cir. 2005), the Ninth Circuit's published opinion in this case.